**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **PATRICIA A. HORTON, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.: 5:66-CV-00445-RDP** |
| | } | |
| **LAWRENCE COUNTY BOARD OF EDUCATION, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## CONSENT ORDER FOR PROVISIONAL UNITARY STATUS

This matter is before the court on the parties' Joint Motion for Approval of Consent Order for Provisional Unitary Status. (Doc. # 77). On October 27, 2023, the court granted preliminary approval of the proposed consent decree and directed the parties to provide notice to the public. (Doc. # 81). The court also set this matter for a Final Approval Hearing. (*Id.*). Thereafter, the Final Approval Hearing was continued and re-set. (Doc. # 91). The court ordered the parties to provide notice to the public regarding the Final Approval Hearing rescheduled for February 16, 2024, and to hold a public meeting to gather public input regarding the proposed Consent Order. (*Id.*).

On February 9, 2024, the parties filed a Notice of No Opposition to the Proposed Consent Order for Provisional Unitary Status. (Doc. # 92). In that Notice, the parties reported on their efforts to notify the public about the proposed Consent Order and the response to those efforts. (*Id.*).

Since late October 2023, the Lawrence County Board of Education ("Board") has made paper copies of the following documents available at all of the Board's schools and the central office: the Joint Motion for Approval of Consent Order for Provisional Unitary Status (Doc. # 77);

the proposed Consent Order (Doc. # 80-1); the Order Preliminarily Approving Settlement and Directing Notice to the Public (Doc. # 81); and relevant District policies. (*See* # Doc. 83, pp. 8-9). These documents have also remained accessible on the Board's website. (Doc. # 9 at 1).

On January 29, 2024, the Board posted a community notice on its Facebook page and the Board's Superintendent sent out a SchoolCast message to all individuals in the school system's student information database, including parents, guardians, employees, and any other family members listed in the database, titled "NOTICE OF PROPOSED SETTLEMENT, COMMUNITY MEETINGS, AND FAIRNESS HEARING." (Docs. # 92 at 2, # 92-1).

On February 1, 2024, at 5:00 p.m. CST, the parties convened a community meeting at the Board's central office where Board counsel provided the community an overview of the proposed Consent Order for Provisional Unitary Status and answered questions from the community. (Doc. # 92 at 2). The meeting was livestreamed on Facebook and a recording of the meeting remains accessible on the Board's Facebook page. (*Id.*). The Board also maintained a "Community Concern Form" on its website under the page heading "Proposed Consent Order." (*Id.*).

The parties report that, as of February 9, 2024, they had received no written objections to the proposed Consent Order for Provisional Unitary Status. (*Id.*).

On February 16, 2024, the court conducted the advertised Final Approval Hearing at the United States District Court for the Northern District of Alabama in Huntsville, Alabama. At the hearing, both parties argued that there is sufficient evidence in the record to justify granting the joint motion. The Board argued that the terms included in the proposed Consent Order satisfy the requirements set forth by the Eleventh Circuit and Federal Rule of Civil Procedure 23. To support its argument, the Board submitted an unopposed affidavit from Dr. Jon Bret Smith ("Dr. Smith"), the Superintendent of Lawrence County schools, including updated information about the terms

of the proposed Consent Order. Plaintiffs agreed with the arguments made by the Board, asserting that the proposed Consent Order contains the best practices to eliminate the *de jure* segregation in the Lawrence County school system. Plaintiffs also invited Bobby Diggs ("Diggs") with the Lawrence County Chapter of the NAACP to speak about the proposed Consent Order. Diggs read a letter from a concerned parent expressing apprehension about the Board's commitment to the proposed Consent Order. Diggs also shared details of his own apprehension regarding the Board. To conclude the hearing, Plaintiff Representatives, as parents with children in the Lawrence County school system, addressed the court about their continuing commitment to the terms of the proposed Consent Order.

Throughout the hearing, the parties requested that the court: (1) adopt the terms of the proposed Consent Order, (2) dissolve the other orders entered in this case, (3) place the case on the court's administrative docket, (4) find the Board to have provisional unitary status, and (5) find that the case is due to be dismissed in three years unless Plaintiffs object.

Based on the discussions during the hearing, the court finds that the proposed Consent Order satisfies the Rule 23(e) requirements enumerated by the Eleventh Circuit. A court may approve a settlement proposal upon finding the terms of the settlement are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To make this determination, a court considers whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i)   the costs, risks, and delay of trial and appeal;
>> (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv)  any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

*Id.* The Eleventh Circuit has also identified six other factors to determine whether a class settlement is "fair, reasonable, and adequate," including:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Under Rule 23, the court finds that:

a.  the proposed Consent Order is, in all respects, fair, reasonable, and adequate and in the best interest of the settlement class;

b.  Plaintiff Representatives and Lead Counsel have adequately represented the settlement class;

c.  there was no collusion in connection with the proposed Consent Order;

d.  the proposed Consent Order should be approved as: (i) it is the result of serious, extensive arm's length and non-collusive negotiations between experienced counsel; (ii) it falls within a range of reasonableness warranting final approval; and (iii) it has no obvious deficiencies;

e.  the relief provided for the settlement class is adequate, considering (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the settlement class; (iii) the terms of any proposed award of attorneys' fees, including the timing of payment; and (iv) any agreement required to be identified under Federal Rule of Civil Procedure 23(e)(3);

f.  the proposed Consent Order treats settlement class members equitably relative to each other; and

g.  the record is sufficiently developed and complete to have enabled Plaintiff Representatives and Defendants to have adequately evaluated and considered their positions.

Under the *Bennett* factors, the court finds that:

a.  the proposed Consent Order is adequate, considering the time and resources that would be necessary should this case proceed to trial;

b.  the relief sought falls within a range of recovery that is fair, adequate, and reasonable;

c.  the terms of the proposed Consent Order considers the technical complexity of the case, the use of significant resources for this case, and the duration of litigation;

d.  the proposed Consent Order is not opposed by anyone; and

e.  the proposed Consent Order comes after years of litigation, and sets a clear terminal point.

Because the court finds the proposed Consent Order satisfies the requirements of Rule 23 and the Eleventh Circuit's *Bennett* factors, and that the proposed Consent Order is "fair, reasonable, and adequate," the parties' settlement will be approved.

Having carefully reviewed the Consent Order for Provisional Unitary Status, and in light of all of these proceedings, the parties' Joint Motion for Approval of Consent Order for Provisional Unitary Status (Doc. # 77) is **GRANTED**. The court hereby **APPROVES** the proposed Consent Order for Provisional Unitary Status. It is therefore, **ORDERED** as follows:

## I.    Student Assignment

1.    By the end of the 2023-2024 school year, the District will survey households in the former R.A. Hubbard feeder pattern about whether to zone the entire Hazlewood Elementary School into a single feeder pattern, and, based on that survey, determine a long-term solution. Prior to disseminating the survey, counsel for the Board will submit the survey to counsel for Plaintiffs, to provide counsel for Plaintiffs with a reasonable opportunity to submit any feedback on the survey, and to ensure that members of Plaintiffs Class make an informed choice in responding to the survey. Until the completion of that survey, the District shall allow for students from the former R.A. Hubbard feeder pattern to select between the Hatton and East Lawrence feeder patterns upon completion of Hazlewood Elementary School, without forfeiting the option for bus transportation by the District.

2.      The Board will commit to keeping Hazlewood Elementary School open and operational as an elementary school for at least 10 years unconditionally. The Board will also commit to keeping the school open for at least 20 years, unless closure during years 11 through 20 would be required to comply with federal or state law.

3.      Following entry of this agreement by the Court, the Board will ensure that any rezoning, construction of a new school, or consolidation of schools, will be done in a nondiscriminatory manner; and the Board will commit to not implementing any rezone plan that negatively impacts the enrollment of Hazlewood Elementary School for at least 20 years.

4.      The Board shall adopt a policy effective the beginning of the 2023-2024 school year that reflects the best practices for removing student barriers to participation in Honors, Pre-Advanced Placement, and Advanced Placement courses, which will include, at a minimum:

  a.  Removal of the requirement that students interested in taking an Honors, Pre-AP, or AP class must first obtain a recommendation from their teacher; and

  b.  Requirements that the Board annually, before the student course registration period, hold an information session on what AP courses are and their importance, enrollment in AP courses, and the process for applying for fee waiver through the College Board. This information shall also be sent home with all high school students. The information session shall be held during times convenient for parents and caregivers, and will take place at each high school and Hazlewood Elementary School.

The Board acknowledges that best practices may change as years pass and retains the authority to update this policy accordingly. To the extent the Board will make amendments to this policy, the Board will not do so in a manner that imposes barriers for underrepresented groups to

participate in Honors, Pre-Advanced Placement, or Advanced Placement courses. To ensure implementation of this policy upon the beginning of the 2023-2024 school year, the Board will permit students, upon presentation of this policy to the public, to register for Honors, Pre-Advanced Placement, or Advanced Placement courses if they already have not.

5.      The Board shall adopt a policy effective the beginning of the 2023-2024 school year that reflects the best practices for removing student barriers to participation in Career Technical courses which will include, at a minimum:

a.  Establish as the only requirements for eligibility to the National Technical Honor Society (NTHS), that: (1) the student has an overall grade point average of 3.0 on a 4.0 scale; and (2) be enrolled in a career/technical education course;

b.  Requirements that the Board annually, before the student course registration period, hold an information session on what career technical courses are available and their importance, enrollment in career technical courses, the process for applying for fee waiver, where applicable, and any student organizations associated with career technical courses (including, FBLA, HOSA, NTHS, and Skills USA). This information shall also be sent home with all high school students, and the information session shall be held during times convenient for parents and caregivers, and will take place at each high school and Hazlewood Elementary School. To ensure implementation of this policy upon the beginning of the 2023-2024 school year, the Board will permit students, upon presentation of this policy to the public, to register for career technical courses if they already have not.

The Board acknowledges that best practices may change as years pass and retains the authority to update this policy accordingly. To the extent the Board will make amendments to this policy, the Board will not do so in a manner that imposes barriers for underrepresented groups to participate in Career Technical courses or Career Technical organizations. To ensure implementation of this policy upon the beginning of the 2023-2024 school year, the Board will permit students, upon presentation of this policy to the public, to register for career technical courses if they already have not.

6.      The Board shall adopt a policy effective the beginning of the 2023-2024 school year that reflects the best practices for removing student barriers to participation in Dual Enrollment courses which will include, at a minimum:

a.   Permitting any student in grades 10-12 with a minimum cumulative grade point average of 2.5 on a 4.0 scale the opportunity to apply for a Dual Enrollment course;

b.   For any student who is interested in a Dual Enrollment course that is unavailable, the District will endeavor to recommend other, available Dual Enrollment courses for the student to participate in;

c.   Permitting students to take Dual Enrollment courses, if interested, at high schools in the District where such courses are available, if not available at the student's high school through either in-person or virtual means of instruction; and

d.   Require that the Board annually, before the student course registration period, hold an information session on what Dual Enrollment courses are and their importance, enrollment in Dual Enrollment courses, and the process for

8

financing their participation in Dual Enrollment courses, including any opportunities for fee waivers or scholarships to participate in such courses. This information shall also be sent home with all high school students, and the information session shall be held during times convenient for parents and caregivers, and will take place at each high school and Hazlewood Elementary School.

The Board acknowledges that best practices may change as years pass and retains the authority to update this policy accordingly. To the extent the Board will make amendments to this policy, the Board will not do so in a manner that imposes barriers for underrepresented groups to participate in Dual Enrollment programs. To ensure implementation of this policy upon the beginning of the 2023-2024 school year, the Board will permit students, upon presentation of this policy to the public, to register for Dual Enrollment courses if they already have not.

7.      Effective the beginning of the 2023-2024 school year, the Board shall amend its existing policy related to its gifted programs so that it reflects the best practices for maximizing opportunities for underrepresented groups to be identified for participation in gifted programs, which will include, at a minimum:

a.  Providing annual training before the commencement of the school year, for elementary and middle school faculties concerning best practices to identify underrepresented groups;

b.  Requirements that the Board annually, and before the commencement of the school year, hold an information session on its gifted programs, eligibility, and screening process, including a discussion on the Board's *Narrative Summary of Gifted Identification Process*. This information shall also be sent home with all

9

elementary school students, and the information session shall be held during times convenient for parents and caregivers, and will take place at each elementary school.

The Board acknowledges that best practices may change as years pass and retains the authority to update this policy accordingly. To the extent the Board will make amendments to this policy, the Board will not do so in a manner that imposes barriers for underrepresented groups to be identified for gifted programs.

## II.    Faculty & Staff Assignment

8.    The Board will work with Plaintiffs to create a supplemental set of duties for a central office administrator to begin shortly before the beginning of the 2023-2024 school year. The person who performs these duties will be identified as the Transition and Inclusive Education Supervisor in addition to any other position he or she holds, and this person's work will, at least in part, entail addressing culture and climate issues in collaboration with the Superintendent Advisory Council and implementing this consent agreement and other practices consistent with a unitary school system. At a minimum, the Transition and Inclusive Education Supervisor shall also offer to consult, on a voluntary basis, all Black principals, assistant principals, and District-level administrators to address culture and climate issues.

9.    The Board will commit to ensuring that the Board, all school administrators, and central office employees, undergo annual training on implementation of the consent agreement.

10.    The Board shall continue its Recruitment Committee under the following conditions:

a.    The mission of the Recruitment Committee will be to aggressively recruit applicants for all available positions within the District, including: faculty and

staff at each school; coaches, sponsors, and advisors for extracurricular activities; districtwide employees; the Career & Technical Center; and Central Office employees, with an eye towards using recruitment as one method to increase racial diversity.

b. The Recruitment Committee shall, at a minimum, consist of the principal or assistant principal at each school in the District; the Transition and Inclusive Education Supervisor; the Director of Human Resources; and a representative of the Plaintiff Class, to be selected by counsel for Plaintiffs. To further the Recruitment Committee's efforts to increase racial diversity, the Committee shall encourage all Black principals, assistant principals, District-level administrators, and coaches to participate in the Recruitment Committee's work, on a voluntary basis.

c. The Recruitment Committee shall meet no fewer than four times per year; and any member may recommend applicants for any job vacancy that becomes available in the District; and

d. The Recruitment Committee shall document its meetings and recruitment activity. These reports shall made to the Superintendent and Board no less than bi-annually.

11. The Board will seek to avoid having the faculty or staff assignment at any school, including the Lawrence County Career and Technical Center, reinforce its racial identifiability and will seek to recruit a diverse pool of applicants, in good faith, for faculty and staff vacancies.

a. "Staff" includes advisors, coaches, and sponsors for clubs and other extracurricular activities.

b.  The District shall establish an aspirational "diversity goal" to seek to increase recruitment and hiring of Black candidates and retention of Black faculty and staff. This percentage reflects an aspirational "diversity goal" that will help the parties assess the adequacy of the District's efforts to increase recruitment and hiring of Black candidates and retention of Black faculty and staff, and it is not intended to be an inflexible metric for assessing whether the District has complied with this Agreement.

12.  As for the District's hiring processes:

a.  All hiring and promotions (e.g., from teacher to assistant principal, principal, administrator, or Central Office staff), shall be made on a nondiscriminatory basis.

b.  When a vacancy occurs, the Human Resources Director shall post the vacancy in compliance with applicable state laws, and on the school district's website, displayed at each school and program site maintained by the school district, on the District's official social media page, and distributed to the *Moulton Advertiser*. Vacancies shall be posted in the *Moulton Advertiser* for 7 days.

c.  All members of any screening or interview committee will annually receive training in best practices for recruiting and hiring a diverse workforce.

d.  The District shall establish an aspirational goal to seek to increase the number of Black applicants who are interviewed for vacancies. This percentage reflects an aspirational "diversity goal" that will help the parties assess the adequacy of the District's efforts to increase the number of Black applicants who are

interviewed for vacancies, and it is not intended to be an inflexible metric for assessing whether the District has complied with this Agreement.

e.  If a candidate is recommended for a school not in compliance with the District's diversity goals and that candidate would not help meet that goal, the committee will include a description of the efforts to hire a candidate that would have contributed towards the District's goals. During the period this consent agreement applies, these reports will be available to Plaintiffs.

13.  To increase the participation of Black participants in the District's "Grow Your Own Program", the District will:

a.  The District shall establish an aspirational "diversity goal" to seek to increase the participation of Black participants in the District's "Grow Your Own Program." This percentage reflects an aspirational "diversity goal" that will help the parties assess the adequacy of the District's efforts to increase the participation of Black participants in the District's Grow Your Own Program, and it is not intended to be an inflexible metric for assessing whether the District has complied with this Agreement.

b.  Hold annual information sessions for non-certified employees and also provide notification to the public (in partnership with Black community institutions) about the program.

c.  Provide information annually to interested high school students about the potential of a career as a teacher, and a teacher in Lawrence Co., given that teachers often return home to teach; and ensure that Black teachers and administrators are part of this information session.

14.     If the Board offers a program designed to develop future school administrators, the Board will:

      a.   Structure the program's admissions requirements to permit any certified teacher with an opportunity to apply.

      b.   Recruit and advertise to its Black educators, to participate in the program; and

      c.   Set an annual goal of Black participation, of at least 10%.

15.     The Board will offer all teachers that have teaching experience of five or fewer years the opportunity to participate in a mentoring program to reduce teacher attrition. Mentors will be provided compensation or release time to support their added mentoring work. To help specifically with Black teacher attrition, the Board will ensure that all Black teachers with five or fewer years of experience receive a direct message encouraging them to participate in this program.

16.     Before the 2024-25 school year, the Board shall establish a Future Teachers of Alabama chapter at each middle and high school in the District to promote an interest in teaching and to provide students with experiences to help them determine whether teaching is a viable career choice. In establishing each chapter, each school with a chapter shall endeavor to have advisors reflect the student population.

17.     The Board should adopt a policy to limit transfers that would conflict with its goal to staff its schools such that each school has a comparable faculty and staff in a manner consistent with federal and state law. This limitation would apply to the sending or receiving school. If a transfer inconsistent with this goal is necessary, the principal must provide a rationale for requesting the transfer to the Superintendent. If the transfer is approved by the Superintendent, the rational, and transfer documentation will be available to Plaintiffs.

**III.     Extracurricular Activities**

18.    No later than the 2023-2024 school year, the Board shall establish a National Jr. Beta Club chapter at Hazlewood Elementary School.

19.    To increase student participation in National Beta Club by under-represented student population, the Board shall establish, for each National Beta Club chapter in the District, a policy, including:

      a.  For Sr. Beta Club chapters, a requisite, cumulative grade point average of 3.0 on a 4.0 scale, and for Jr. Beta Club chapters, an overall "B" average;

      b.  Offering a free or reduced-price membership to qualifying students;

      c.  That, to attest to the applicant's good character and behavior, a student be permitted to submit a letter of recommendation from a teacher or community leader; and

      d.  That the chapter's sponsor endeavor to ensure that each chapter's officers reflect the student population at each school.

All other aspects of the chapters, beyond the aforementioned admissions requirements, shall be governed by their schools. The Board acknowledges that best practices may change as years pass and retains the authority to update this policy accordingly. If the Board amends this policy, the Board will not do so in a manner that presents barriers to underrepresented students.

20.    By the end of the 2023-2024 school year, the District will survey parents and students regarding barriers to participating in extracurricular activities. Prior to disseminating the survey, counsel for the Board will submit the survey to counsel for Plaintiffs, to provide counsel for Plaintiffs with a reasonable opportunity to submit any feedback on the survey. The District will develop, in collaboration with the Superintendent Advisory Council and the Transition and Inclusion Supervisor, a plan to address any barriers to participation in extracurricular activities

uncovered in the survey findings. The District will also furnish each response to the survey to Plaintiffs' counsel.

21.     For a period of three years, the leadership of Hatton High School, East Lawrence High School, and Lawrence County High School will ensure that former RAH students have an opportunity to participate in a student leadership club, such as student government. In order to meet this aspect of the plan, school leaders will encourage former RAH student to run for student government, but if no RAH students are elected, the school leaders will appoint interested students to participate.

22.     Before the 2024-2025 school year, the Board shall establish, at each high school in the District, a Mu Alpha Theta Mathematics Honor Society:

        a. Each chapter will have the following membership requirements: (1) students must be in grades 9-12; (2) students must be registered with Mu Alpha Theta at the school at which their permanent records reside; (3) members must have completed the equivalent of 2 years of college preparatory mathematics, including algebra and/or geometry, and have completed or are enrolled in a third year of college preparatory mathematics; and (4) students must have a math grade point average of at least a 3.0 on a 4.0 scale, to be inducted. There will be no additional requirements for membership.

The Board acknowledges that best practices may change as years pass and retains the authority to update the membership requirements of Mu Alpha Theta accordingly. If the Board revises the membership requirements, the Board will not do so in a manner that presents barriers to underrepresented students.

23.     Annually, the Board will require each school, during school hours, to host an organization fair in which students are able to learn about clubs, organizations, and other extracurricular activities. A document with a list of all organizations, including eligibility requirements (where applicable), and a description of the organizations, shall be provided to all parents.

## IV.    Facilities

24.     No later than the Board's regularly scheduled November 2023 Board meeting, the Board shall approve a contract for the sale of the land and facilities that contain the former R.A. Hubbard High School to the town of North Courtland, to at least, in part, be for the direct usage by children of the former R.A. Hubbard feeder pattern.

25.     For the Board's Fiscal Year 2024 Capital Plan, the Board will include, in its top three list of priority projects, an allocation to Hazlewood Elementary School for facility improvements in the amount of no less than $500,000, and to not include the Board's plan to build a new gymnasium at the school.

26.     The Board shall provide students at Hazlewood Elementary School facilities, including playground equipment that are equitable to the other elementary school facilities operated by the Board of a similar age. The Board shall maintain standards for ensuring that improvements related to technology and school security systems are treated equitably between the Board's elementary schools.

27.     By no later than April 30, 2024,, the Board shall approve contracts necessary for the construction of a new gymnasium at Hazlewood Elementary School and shall hold a groundbreaking ceremony.

## V.    Transportation

28.     The Board shall operate the District's bus routes in a manner that does not revert to a dual system or otherwise discriminate against Black students.

29.     The Board should directly pay for and provide at least two (2) buses for students from the former R.A. Hubbard Feeder Pattern now attending schools in Hatton or East Lawrence and participating in sports and other extracurricular activities. These buses should transport students from any meetings, practices, games, or other events relating to the students' participation in sports and other extracurricular activities, to the former R.A. Hubbard's campus. The Board will commit to providing the transportation mentioned in this paragraph from the 2023-2024 school year until the 2029-2030 school year. This is intended to allow students in 7th grade for the 2023-2024 school year to receive transportation for 6 school years until their anticipated high school graduation in spring of 2030. Thereafter, the Board shall determine whether to continue this policy.

      a.  Recognizing that not all students will be busy the entire period after school, the Board will recruit teachers to tutor and support students from the former R.A. Hubbard Feeder Pattern whose practice is over but who are still waiting for the bus.

**VI.     Quality of Education**

30.     Prior to the filing of this consent agreement, the Board will work with Plaintiffs to revise the District's Code of Conduct that seek to implement positive behavioral interventions and supports (PBIS) and alternatives to exclusionary discipline practices (e.g., suspensions, expulsions, unliteral transfers to the Judy Jester Learning Center for behavioral issues, school-based arrests, and referrals to law enforcement.).

a.  The Board shall, before the commencement of the 2023-2024 school year, provide trainings to administration and staff on the revisions made to the Code of Conduct.

The Board acknowledges that best practices may change as years pass and retains the authority to update the Code of Conduct accordingly. If the Board will make amendments to the Code of Conduct, the Board will not do so in a manner inconsistent with Alabama state law and in a manner that does not increase the use of exclusionary discipline practices.

**VII.   Superintendent Advisory Council**

31.   The Superintendent shall develop and implement a Superintendent's Advisory Council ("SAC").

a.  The SAC's membership shall include students and parents.

b.  The Superintendent will select student representatives from Hatton High School, East Lawrence High School, and Lawrence County High School.

c.  The membership shall also include one Black student from the former R.A. Hubbard Feeder Pattern from both Hatton High School and East Lawrence High School, if the student representative selected, in letter b. above, does not otherwise meet this requirement.

d.  The Superintendent will develop a process for soliciting applications from parents and selecting up to 10 parent representatives. The Superintendent's selection process will include measures for ensuring that the SAC is diverse and includes parents from a cross-section of Lawrence County, geographically and by grade span. Counsel for the Plaintiffs shall select one parent to the SAC.

    e.   The SAC shall meet with the Superintendent at the end of each nine weeks, and the purpose of the SAC is for students and parents to serve as an intermediary between the Superintendent and members of the school community; and

    f.   The Superintendent will consider any concerns raised by the SAC, and the Superintendent will present an annual update to the Board of the SAC's activities, significant issues raised, and the Superintendent's resolutions of those issues.

## VIII.    Provisional Unitary Status, Administrative Closure with Dismissal, and Dispute Resolution Processes

32.    After receiving approval from their clients, counsel for the Parties will submit a Joint Motion for Approval of Consent Order and for Provisional Unitary Status ("Joint Motion").

    a.   The Joint Motion will state the Board's position that it has been operating in a unitary manner and that its recent actions have shown that the Board is ready to move for unitary status. The Plaintiffs will state that they do not object to the Board's position provided that the terms of the Parties' Consent Agreement are acceptable to the Court and embodied in a court order, that they agree to move forward with implementation of the consent agreement under the terms included in it, and that it is their hope that with full, good faith compliance, the Board will reach unitary status at the end of the Court's monitoring period.

    b.   The Joint Motion will also explain that the Parties enter into the present consent agreement to avoid costly litigation and for the District Court to retain limited jurisdiction for a period of time after the Board has implemented the consent agreement to ensure proper implementation of the consent agreement, to guard

against the possibility of reoccurring violations of the requirements for unitary status, and that the Board continues its unitary practices.

c.   The Joint Motion will ask the Court to set a fairness hearing to approve the terms of the consent agreement because, as described below, no future fairness hearing will be required to declare the Board unitary and dismiss this matter with prejudice.

d.   The Joint Motion will ask the Court to incorporate this consent agreement into the Court's Order if the Court approves the terms of this consent agreement.

e.   The Joint Motion will ask the Court to craft the order granting the adoption of the Parties' consent agreement such that it has the effect of dissolving all prior orders and making the Court's order the only operative order.

f.   Subject to the dispute resolution provisions described below, the Joint Motion will ask the Court to place this matter on its administrative closure docket.

g.   The Joint Motion will ask the Court to state in its order that this case will be dismissed with prejudice and the District declared unitary three years from the date of its entry upon notice from a party consistent with 32(h) below, unless the Plaintiffs file a motion opposing dismissal of this case based on the Board's failure to implement this consent agreement. The Court will retain jurisdiction over two narrow provisions of this Agreement for as long as those provisions are in place. The Court will be authorized, solely consistent with the dispute resolution process described below, to amend this provision of its order.

h.  To carry out section 32.g., above, one of the parties shall file a notice with the Court explaining that the three-year timeline has expired and will move the Court to dismiss the case with prejudice and declare the District unitary.

33.    The Parties agree to the following limited oversight during the three-year implementation of this Consent Agreement:

a.  Neither Party may raise any issue to the Court in connection with this case other than a violation of the terms of this Consent Agreement.

b.  The Plaintiffs will not petition the Court for redress in connection with this case without complying with these terms:

i.  The issue must be presented in writing to the Transition and Inclusive Education Supervisor, Superintendent, or Superintendent's Advisory Council ("SAC"). If the SAC receives a concern about the implementation of the terms of this agreement, the SAC will present the issue and make recommendations to the Superintendent or Transition and Inclusive Education Supervisor.

ii.  The Superintendent and Transition and Inclusive Education Supervisor will be given a reasonable period to investigate, consider, and remedy, as necessary, the issue raised. No later than three days from the date of the conclusion of the investigation, the Superintendent, or Transition and Inclusive Education Supervisor will notify the complainant/Party of their decision in writing. If the issue raised is not one of a direct violation of the terms of the consent agreement, the Superintendent, and Transition and Inclusive Education Supervisor will notify the complainant/Party of that

fact. However, the Superintendent and Transition and Inclusive Education Supervisor will still review the issue and remedy it as necessary.

iii. If the issue is not resolved to the satisfaction of the complainant/Party, the complainant/Party will promptly notify the Superintendent in writing so that the Superintendent may place the item on the Lawrence County Board of Education's agenda for review at the Board's next available meeting. The Board will hear the issue during a public meeting of the Board and will resolve the same consistent with the provisions of the Alabama Open Meetings Act. Within three days of hearing the issue, the Board will notify the complainant/Party of their decision about the complaint.

iv. If the complainant believes that the violation of this Consent Agreement has not been remedied by the Board, counsel for the Plaintiff will be allowed to petition the Court for redress, but counsel's petition must include a factual statement demonstrating its compliance with this process.

c.  During the three years this matter is on the administrative closure docket, Counsel for the Board and the Plaintiffs shall meet periodically, no less than annually, to discuss the Board's implementation of the terms of this Consent Agreement. In monitoring the Board's compliance with the terms of this Consent Agreement during this three-year period, the Plaintiffs may: conduct site visits of District schools and administrative offices, including on-site or virtual interviews of staff in the presence of the Board's counsel; and request reports or data as are reasonably necessary for monitoring compliance. The

District shall work with the Plaintiffs in good faith and respond in a timely manner to such reasonable requests for information.

34.    The Parties agree that following the dismissal with prejudice of this matter, described above, the Court will retain jurisdiction to hear any claim of breach of consent agreement specifically for these terms: I.2 (Hazlewood Elementary School remaining open), I.3 (no rezoning that negatively impacts Hazlewood Elementary School), and V.29 (extracurricular bus transportation for former R.A. Hubbard students) for as long as those terms are operative.

35.    Publicizing and Posting of Agreement:

a.  Following the Court's order granting this consent agreement, the Parties agree that the Board, counsel for Board, and counsel for Plaintiffs shall hold at least one community meeting to discuss the consent agreement, including any policies (or amendments) implemented thereto, and the Court's order approving same.

b.  The Board will make the consent agreement and order from the Court available on its website.

Therefore, the court **DIRECTS** the Clerk of the Court to administratively close this case. Accordingly, this case is **DISMISSED WITHOUT PREJUDICE**. At the end of the three-year provisional period, this case may be reopened upon a request of any party. The court will then re-evaluate the categories enumerated in this order to determine whether the Board has maintained Unitary Status.

**DONE** and **ORDERED** this February 21, 2024.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

24